IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Virginia



| | |
|---|---|
| MARIA XIMENA GOYZUETA-PICKETT ) <br> and ) <br> SHARANAM HAWAII, LLC ) <br>       Plaintiffs, ) <br> v. ) <br> ANEAKA ENGLISH, ) <br> TASO R. SAUNDERS, ) <br> E.S. INVESTMENT INC., ) <br> CONSTRUCTION LOAN COMPANY, LLC, ) <br> and ) <br> E.S. REALTY GROUP, LLC ) <br>       Defendants. ) | Civil Action No. 1:15CV328 TSE/IDD |

## COMPLAINT

Plaintiffs Maria Ximena Goyzueta-Pickett ("Pickett") and Sharanam Hawaii, LLC ("Sharanam") (collectively "Plaintiffs"), by their undersigned counsel, state as follows as their complaint against Defendants Aneaka English ("English"), Taso R. Saunders ("Saunders"), E.S. Investment Inc. ("ESI"), Construction Loan Company, LLC ("CLC"), and E.S. Realty Group, LLC ("ESRG") (collectively "Defendants"):

### PARTIES

1. Maria Ximena Goyzueta-Pickett is a resident and a citizen of Hawaii.

2. Sharanam Hawaii LLC is a Hawaii single member limited liability company with its principal place of business in Hawaii. Pickett is Sharanam's sole member.

3. Aneaka English is a citizen of and resident of Virginia. She appears be the president of ESI and is otherwise affiliated with and / or an owner of ESI, CLC and ESRG.

4. Taso Saunders is a citizen of and resident of Virginia. He is affiliated with and / or an owner of ESI, CLC and ESRG. He also holds himself out to be a "contract manager" with E.S. Real Estate Consortium (a business or entity which is not registered with the Virginia State Corporation Commission).

5. E.S. Investment, Inc. is a Virginia corporation with its principal place of business at 210 North Lee Street, Suite 103, Alexandria, VA 22314. Saunders is its registered agent.

6. Construction Loan Company, LLC is a Virginia limited liability company with its principal place of business at 210 North Lee Street, Suite 103, Alexandria, VA 22314. Saunders is its registered agent.

7. E.S. Realty Group, LLC is a Virginia limited liability company with its principal place of business at 210 North Lee Street, Suite 103, Alexandria, VA 22314. Saunders is its registered agent.

### JURISDICTION AND VENUE

8. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the Plaintiffs and the Defendants and the matter in controversy exceed the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

9. Venue is proper as the cause of action arose in this district.

## FACTS

10. Defendants have defrauded Ms. Pickett out of more than $130,000. Through a series of purported loans or investments, Defendants persuaded Pickett to "invest" $110,000 of her hard earned money (including $70,000 of her retirement funds) with CLC with supposed guaranteed returns of 20 percent or more within 60 days. Since November 2014, Pickett has attempted to obtain the return of her money, without success. Defendants promised wired funds and checks on numerous occasions, and even went so far as to provide false confirmations for both wires and checks. They have delivered nothing but excuses and equivocations.

11. During the summer of 2014, Pickett was introduced to English who held herself out to be an expert in real estate investing. English represented that her company, ESI and its affiliated companies (such as CLC and ESRG) assisted individuals in investing in undervalued real estate. She represented that with investments from individuals such as Pickett, ESI and its affiliated companies would buy, rehabilitate and flip real estate and return part of the profit to the investors. English provided Pickett with slick investment guides and other information that made English, ESI and their affiliates look legitimate.

12. In order to make her first investment, an associate of English told Pickett that she needed to create an LLC, as only companies could participate in some of the investments. Pickett created Sharanam Hawaii LLC specifically in order to participate in the offered investments.

13. On about July 28, 2014, and based on English's representations, Pickett caused Sharanam to enter into an "Investment Agreement" with CLC, in the amount of $25,000, in which Sharanam was to "loan funds" to CLC for the purpose of investing in real estate. In return, Pickett and her LLC, Sharanam were to receive repayment of the principal plus 20% interest within 60 days. English signed the agreement on behalf of CLC as "Aneaka English, Management."

14. Near the expiration of the 60 day period, English convinced Pickett to "roll over" the funds from the July 28 investment into a subsequent investment. Relying on English's statements regarding the success of the previous investment, on about September 29, 2014, Pickett caused Sharanam to enter into a second "Investment Agreement" with CLC in the amount of $40,000 (the $30,000 value from her original "investment" plus an additional $10,000). This time the terms included return of principal plus 22% interest within 60 days (with the possibility of a 30 day extension should certain conditions be met). Although the "agreement" was with CLC, it specified that ESI would be paid a "management" fee of five percent of the "annual interest."

15. Having lured Pickett into the scam by demonstrating the 20% (all on paper) profit of her initial investment, English convinced Pickett to make two additional "investments" using money from Pickett's IRA.

16. The first "investment" was in the amount of $40,000, as memorialized in an "Investment Agreement" dated September 29, 2014. This "agreement" purported to return principal plus 22% interest within 60 days, less a management fee to ESI. It was signed by English as "Management" of CLC. Pickett had her IRA custodian wire the money to ESI's bank account as instructed.

17. The second "investment" was supposed to be for a property "flip." Pickett was to provide $30,000 from her IRA to finance the flip. There were numerous documents that were to be signed such as the property purchase agreement, mortgage loan, and others. While Pickett was out of the country, English convinced Pickett's IRA custodian to wire the $30,000 to a supposed escrow account. The money was wired on October 8, 2014. Pickett was understandably upset that English would have the money wired without any signed agreements. Pickett demanded her money back, but English and Saunders stalled for weeks with numerous excuses. After nearly a

month, English offered to turn the $30,000 Pickett had wired into another loan effective October 8. Pickett accepted since there were, at that time, only a few weeks left until the investment matured. Pickett signed an "Investment Agreement" dated and effective October 9, 2014. This "agreement" purported to return principal plus 20% within 60 days, less a management fee to ESI. After Pickett signed and mailed the agreement to them, Saunders then told her they would not do the investment retroactively. Instead he agreed that they would return her $30,000 and they would not move forward with the loan. Saunders' statements were demonstrably false. Two days later he sent a "ratified" agreement with his signature. It was signed by Taso R. Saunders, J.D., as "Representative" of CLC purportedly on December 2, 2014.

18. All of the agreements were supposedly for investments in specific properties. Each was supposed to be secured for Pickett through a deed of trust.

19. Despite this, Pickett was unable to get Saunders or English to provide her with the signed and recorded deeds of trust on any of the "investments."

20. English's actions in having Pickett's funds wired without any agreements in place caused Pickett to question all of the investments.

21. On November 26, 2014, Pickett demanded the return of her funds from the two September 29 "investments."

22. On December 8, 2014 (the 60th day under the October 9 "agreement") Pickett demanded the return of those funds.

23. In response, English and Saunders interposed every road block imaginable. First, they claimed to invoke the 30 day extension (which they failed to properly invoke under the "agreements"). Next, they claimed the October 9 agreement was really not effective until

December 2 (the date of Saunders' signature) despite the fact that they had Pickett's money since October 8.

24. In the days and months that followed, English and Saunders promised wire transfers. When the wire transfers mysteriously did not go through, they claimed it must be a problem with Pickett's bank. They provided false wire transfer confirmations. When the wire transfers "didn't work," they promised checks that never arrived. They even went so far as to email what are apparently faked Wells Fargo on-line banking check confirmations to "prove" the money was on its way. The checks never arrived.

25. English's and Saunders' goal was to separate Pickett from her money. They fraudulently induced her to enter into the "Investment Agreements," and never intended to honor them or to return Pickett's money.

### COUNT I
### CONSPIRACY TO INJURE PLAINTIFFS IN THEIR TRADE, BUSINESS OR PROFESSION, VA. CODE §§ 18.2-499 & 500

26. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 26 above.

27. English, Saunders, ESI, CLC, and ESRG combined, associated, agreed, mutually undertook, concerted and conspired, each with the other, to willfully and maliciously injure Pickett and Sharanam in their reputation, trade, business and profession. This included, among other things, the Defendants' agreement and desire to defraud, steal and convert money from Pickett and Sharanam.

28. Overt acts of the conspiracy include the following, among others:

    a. English emailed Pickett "investment" materials about fake potential investments.

    b. English and Saunders emailed Pickett "Investment Agreements" that appeared to give legitimacy to the supposed investment transactions.

    c. English and Saunders used CLC as a sham company to effect the fraud.

    d. English and Saunders used ESI to receive funds from Picket and Sharanam with no intention of returning the funds.

    e. English and Saunders delayed signing the October 9 "Investment Agreement" as an excuse to delay supposed repayment of Pickett's money.

    f. English and Saunders sent Pickett numerous emails representing that they were returning Pickett's money through wire transactions or checks. Each of these communications were designed and intended to induce Pickett to delay taking any action against the Defendants.

    g. Defendants converted, and otherwise stole Pickett's and Sharanam's money.

29. The Defendants' actions have directly and proximately caused damage to Pickett and Sharanam in an amount of at least $130,000.

30. Pursuant to Virginia Code §§ 18.2-499 and 500, Pickett and Sharanam are entitled to recover three-fold damages sustained as a result of the joint actions of the Defendants, as well as the costs of this suit, including reasonable attorneys' fees.

### COUNT II
### COMMON LAW CONSPRIACY

31. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 31 above.

32. English, Saunders, ESI, CLC, and ESRG combined, associated, agreed, mutually undertook, concerted and conspired, each with the other, to criminally and unlawfully injure

Pickett and Sharanam through various criminal and unlawful means including but not limited to by committing the overt acts listed above in furtherance of the conspiracy.

33. The Defendants' actions have directly and proximately caused damage to Pickett and Sharanam in an amount of at least $130,000.

34. Because the actions of the Defendants were willful and malicious, Pickett and Sharanam are entitled to recover punitive damages in the amount of at least $350,000, plus all costs and expenses of this suit.

## COUNT III
## FRAUD

35. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 35 above.

36. Defendants embarked on a scheme of fraud and deceit to cheat Pickett (and Sharanam) out of their assets and money.

37. In order to induce Pickett to part with her money, and for each separate "Investment Agreement," English and Saunders promised that they would return her money in 60 days with a return of at least 20%.

38. English and Saunders also promised that Pickett's investments would be secured by deeds of trust that would be recorded on each property.

39. At the time they made the material representations to Pickett, English and Saunders knew their representations were material and false. They never intended to record any deeds of trust for the benefit of Pickett and they never intended to return her money.

40. Pickett (and Sharanam) reasonably relied on English's and Saunders' misrepresentations.

8

41. The Defendants' actions have directly and proximately caused damage to Pickett and Sharanam in an amount of at least $130,000.

42. Because the actions of the Defendants were willful and malicious, Pickett and Sharanam are entitled to recover punitive damages in the amount of at least $350,000, plus all costs and expenses of this suit.

## COUNT IV
## **BREACH OF CONTRACT**

43. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 43 above.

44. CLC entered into two agreements with Pickett and one agreement with Sharanam.

45. CLC materially breached all three agreements by refusing to cause the return of Pickett's and Sharanam's principal and interest as required by the contracts.

46. The Defendants' actions have directly and proximately caused damage to Pickett and Sharanam in an amount of at least $130,000.

## COUNT V
## **CONVERSION**

47. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 47 above.

48. Pickett and Sharanam are the rightful owners of the money taken be Defendants.

49. Defendants have wrongfully exercised dominion or control over Plaintiffs' property thereby depriving Plaintiffs of possession.

50. The Defendants' actions have directly and proximately caused damage to Pickett and Sharanam in an amount of at least $130,000.

51. Because the actions of the Defendants were willful and malicious, Pickett and Sharanam are entitled to recover punitive damages in the amount of at least $350,000, plus all costs and expenses of this suit.

### PRAYER FOR RELIEF

Plaintiffs pray this Court to enter judgment in their favor against Defendants jointly and severally, and award Plaintiffs:

1. Damages in an amount to be determined at trial.
2. Punitive damages in an amount to be determined at trial.
3. Treble damages under Va. Code §§ 18.2-499 & 500.
4. Attorneys' fees and costs;
5. Pre-judgment and post-judgment interest; and
6. Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiffs respectfully demand TRIAL BY JURY for all issues so triable.

Respectfully Submitted,

MARIA XIMENA GOYZUETA-PICKETT
SHARANAM HAWAII, LLC

*/s/ John H Craddock/*

John H. Craddock, Jr., Esq. (VSB # 41366)
Michele Burke Craddock, Esq. (VSB # 65314)
Attorneys for Maria Ximena Goyzueta-Pickett and Sharanam Hawaii, LLC
CRADDOCK LAW PLC
2304 West Main Street
Richmond, Virginia 23220
Telephone:   (757) 903-6710
Facsimile:
jcraddock@craddocklawfirm.com